UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EVA CARDOZA, | : | Case No. 22-cv-591(SVN) |
|     Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| TIMETHEA PULLEN et al., | : | |
|     Respondents. | : | June 6, 2022 |

REPLY TO PETITIONER'S RESPONSE TO MOTION TO DISMISS

The petitioner's argument that she is entitled to due process protections – including access to the BOP official who made the decision to redesignate her from home confinement, confrontation rights, a "neutral and detached decisionmaker," and the right to counsel – is unprecedented in two ways: first, the petitioner's argument is simply not supported by the Supreme Court or Second Circuit precedent on which she relies; second, no court anywhere has decided that federal inmates serving their sentence on home confinement are entitled to due process protections before the BOP elects to redesignate them to custodial incarceration. And since the BOP has been designating inmates to home confinement (and sometimes redesignating them to prison) for decades, the latter fact is telling. Without support, the petitioner asks this court to expand due process protections found in other contexts to her situation, despite all relevant statutes and regulations giving BOP discretion to place inmates as the agency deems appropriate. The court should decline the petitioner's invitation.

I. The Petitioner is Not Entitled to Due Process Protections

The petitioner incorrectly contends that she is entitled to due process protections prior to redesignation to custodial incarceration on account of her CARES Act designation to service of her sentence on home confinement. (Opp., 8.) At the outset, the petitioner fails to appreciate how an inmate designated to serve her ongoing federal sentence at home is in a fundamentally different position than a parolee, a pre-parolee, or someone on work release in terms of the nature of the individual's liberty. But perhaps more importantly, the petitioner's argument ignores the core principle – that of an inmate's reasonable expectation – adopted in Morrissey and maintained in the case law that followed.

Morrissey began with "an examination of the nature of the interest of the parolee in his continued liberty." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). In assessing that interest, the Court repeatedly emphasized the importance of the parolee having "relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. at 482 (emphasis added); see also id. at 478-89 (in parole system State maintains "the authority to return the parolee to prison to serve out the balance of his sentence if he fails to abide by the rules"); id. at 479 ("Implicit in the system's concern with parole violations is the notion that the parolee is entitled to retain his liberty as long as he substantially abides by the conditions of his parole.").

The principle of an inmate's expectations is present throughout the governing Supreme Court case law and appears to be the controlling factor in whether a deprivation of liberty is deemed to be sufficiently severe to trigger due process protections:

- Four years after Morrissey, the Supreme Court in Meachum v. Fano emphasized the same principle: "Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all."  427 U.S., 215, 229 (1976).

- The Supreme Court's decision in Sandin v. Conner similarly relied on inmate expectations, observing that liberty interests arising under the Due Process Clause are found in "freedom from restraint . . . exceeding the sentence in . . . an unexpected manner" and holding that the Due Process Clause did not afford the inmate in that case where "[t]he regime to which he was subjected . . . was within the range of confinement to be normally expected for one" serving the sentence in question.  515 U.S. 472, 484, 487 (1995).

- In Young v. Harper, the Supreme Court again discussed at length the concept of inmate expectations, citing Morrissey's "implicit promise" language with approval.  520 U.S. 143, 150 (1997).  In rejecting the State's argument in that case that a pre-parolee's continued participation in that program was subject to "extrinsic events" (namely, the Governor's decision on parole), the Court held not that the State's argument regarding expectations was irrelevant or nondispositive; rather, the Court concluded that on the record, the State's argument – which relied on a procedure that postdated the pre-parolee's return to court – was factually wrong.  See id. at 150-51.  Indeed, the Court rejected as similarly unproven (but not as irrelevant) the State's argument that the parole

3

board maintained "absolute discretion" to reimprison the pre-parolee in that case.  See id. at 151 n.3.

Indeed, the Second Circuit has already acknowledged the key role that inmate expectations play in determining whether a deprivation in this context triggers protection under the Due Process Clause.[1]  See Holcomb v. Lykens, 337 F.3d 217, 221-22 (2d Cir. 2003) ("the question for us with respect to Holcomb's claim is whether Vermont's extended furlough is similar enough to parole as characterized by Morrissey and Young with respect to the extent and conditions of the liberty conferred to him as a furloughee to be treated as though it were parole for Fourteenth Amendment purposes").  In considering that question, the Holcomb court analyzed regulations dealing with revocation of furlough, which provided certain procedural safeguards; the court also observed, however, that "it is not clear whether [those regulations] apply to the refusal to renew extended furlough."  Id. at 222-23 (emphasis in original).  The court thought an answer to that question critical "to determine whether Vermont's extended furlough is sufficiently similar to Morrissey's characterization of parole to constitute a liberty interest requiring due process protection" because of Morrissey's "implicit promise" language.  Id. at 223.  The court concluded:

> If extended furlough must be renewed every fifteen days absent a finding of improper behavior, there is a good argument to be made that the furloughee has a reasonable expectation that he or she will maintain his or her status so long as he or she behaves properly. If, on the other hand, DOC may decline to renew extended furlough entirely

---

[1] In Gonzalez-Fuentes v. Molina, on which the petitioner relies for support, the First Circuit acknowledged the same "implicit promise" principles discussed above.  See Gonzalez-Fuentes v. Molina, 607 F.3d 864, 888 (1st Cir. 2010) (noting inmate's expectations).

4

at its discretion, the argument that the furloughee has such an expectation is severely, perhaps fatally, weakened.

Id.[2]

In this case, the petitioner cannot identify any statutory or regulatory authority that would lead any reasonable inmate to conclude that she would be <u>entitled</u> to remain on home confinement for any period absent the BOP proving an infraction or violation of some policy. Indeed, the opposite is true; the statutory and regulatory scheme make clear that the BOP maintains unreviewable discretion to designate the location where an inmate will serve her sentence. <u>See</u> 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment."); § 3621(b)(5) ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."); § 3624(c)(4) (governing prerelease custody like home confinement, "Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621."); 28 C.F.R. § 570.22 ("Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis . . . .").[3] Because the petitioner at all relevant times continued to serve her ongoing

---

[2] In <u>Kim v. Hurston</u>, on which the petitioner relies and which predates <u>Holcomb</u>, the court does not appear to have explicitly considered the "implicit promise" requirement. Nevertheless, New York law also appears to have explicitly guaranteed the plaintiff in that case a hearing; <u>see</u> 7 CRR-NY 1904.2(h); as such, she would reasonably have expected an entitlement to process prior to work release revocation.

[3] The position of the Department of Justice as to the future of CARES Act home confinement designees further reveals the inability of the petitioner to claim any type of reasonable expectation that she was entitled to remain on home confinement indefinitely. On January 15, 2021, the Office of Legal Counsel issued an opinion that the CARES Act

federal sentence, the BOP retained (and retains) discretion to place her where it deems appropriate. Because the BOP retained that discretion, there was no "implicit promise" that she would be entitled to remain on home confinement, and no due process attaches to her redesignation.

II.     Accardi Does Not Apply

In her opposition, the petitioner argues that BOP's regulations pertaining to inmate discipline apply to a decision to redesignate an inmate serving a sentence on home confinement to custodial incarceration. (Opp., 22.) The petitioner incorrectly conflates the disciplinary program set forth in BOP's regulations with the decision on designation. In fact, the petitioner's argument tries to have it both ways; first, the petitioner relies on the regulatory procedures afforded to an inmate that allow for limited procedures before

---

authorizes the Director of the Bureau of Prisons to place prisoners in home confinement only during the Act's covered emergency period and when the Attorney General finds that the emergency conditions are materially affecting BOP's functioning. Should that period end, or should the Attorney General revoke the finding, the Bureau would be <u>required</u> to recall the prisoners to correctional facilities unless they are otherwise eligible for home confinement under 18 U.S.C. § 3624(c)(2).

Office of Legal Counsel, Home Confinement of Federal Prisoners After the COVID-19 Emergency (Jan. 15, 2021) (emphasis added), available at https://www.justice.gov/olc/file/1355886/download.
    On December 21, 2021, the Office of Legal Counsel rescinded its prior opinion and on reconsideration, "conclude[d] that section 12003(b)(2) and the Bureau's preexisting authorities are better read to give the Bureau discretion to permit prisoners in extended home confinement to remain there." Office of Legal Counsel, Discretion to Continue the Home-Confinement Placements of Federal Prisoners After the COVID-19 Emergency (Dec. 21, 2021), available at https://www.justice.gov/olc/file/1457926/download. Notably, the December 2021 opinion emphasized that its interpretation of the CARES Act "allows the agency to use its expertise to recall prisoners . . . where penologically necessary." <u>Id.</u> at *15.

the Unit Discipline Committee (28 C.F.R. § 541.7) and the Discipline Hearing Officer (28 C.F.R. § 541.8); at the same time, the petitioner alleges that it is the Residential Reentry Manager – not the UDC or DHO – "who determines if individuals supervised by the New York Community Corrections Office will be returned to prison for violations while on home confinement" and complains that the afforded procedures did not give her the opportunity to make her case to the RRM.[4]  (Pet., ¶7; Opp., 18.)

In sum, the petitioner's redesignation decision was not made in the context of her disciplinary proceedings, and Accardi does not apply to a completely different set of regulations that govern different issues.

III.     The Petitioner Fails to State a Rehabilitation Act Claim

The petitioner does not dispute that, under § 504 of the Rehabilitation Act, she is obligated to plausibly allege that she has been denied some benefit or participation "'solely by reason' of [her] disability." Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir. 1998) (quoting § 504).  (See Opp., 23.)  Her only effort in actually satisfying that requirement, however, is alleging it (Opp., 24.), and that is not enough.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

---

[4]The petitioner's reading of the disciplinary regulations does not make sense for another reason: the petitioner characterizes a redesignation decision as "one of its most severe sanctions," but at the same time, if redesignation decisions are processed through disciplinary procedures, redesignation would be a sanction available at the UDC level without referral to DHO, while other less severe sanctions would require referral.  See 28 C.F.R. § 541.7(f).

Given the facts plausibly alleged, namely, the BOP's redesignation of the petitioner from home confinement to custodial incarceration following a positive drug test, there is no plausible inference that she has been the victim of discrimination "solely by reason" of her disability.[5]

IV.     The Petitioner's Failure to Exhaust Warrants Dismissal

Contrary to the petitioner's arguments (Opp. 25-26), Jones v. Smith, 720 F.3d 142, 147 n.3 (2d Cir. 2013) plainly casts significant doubt on the sweeping language in Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001) regarding the inapplicability of the PLRA and its exhaustion regime to § 2241 petitions. Rather, considering the language and purpose of PLRA exhaustion, which applies to an "action . . . brought with respect to prison conditions under . . . any Federal law," PLRA exhaustion does apply to § 2241 petitions, at least insofar as those petitions raise conditions claims, rather than fact or duration claims.

Moreover, the petitioner's contention that this is not an action challenging prison conditions is unavailing. (Opp., 25.) In other areas, the PLRA defines "civil action with respect to prison conditions" as "any civil proceeding arising under Federal law with

---

[5]The petitioner also fails to address the respondents' argument concerning her failure to exhaust her Rehabilitation Act claim specifically. See, e.g., Wise v. C. Maruka, No. CV 1:20-00056, 2021 WL 1603819, at *11 (S.D.W. Va. Jan. 5, 2021) ("Before an inmate may seek judicial review of a disability discrimination claim, the inmate must exhaust the DOJ's administrative remedy process as set forth in 28 C.F.R. § 39.170" and collecting cases), report and recommendation adopted sub nom. Wise v. Maruka, No. CV 1:20-00056, 2021 WL 1146002 (S.D.W. Va. Mar. 25, 2021).

respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison." 18 U.S.C. § 3626(2); see also Ilina v. Zickefoose, 591 F. Supp. 2d 145, 148 (D. Conn. 2008) ("A challenge to the execution of a sentence – in contrast to the imposition of a sentence – is properly filed pursuant to § 2241. Execution of a sentence includes matters such as 'the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions'" (quoting Levine v. Apker, 455 F.3d 71, 78 (2d Cir. 2006)).

In other words, "prison conditions" claims, for PLRA purposes at least, address those aspects of prison life other than the fact or duration of confinement. This is such a claim, and PLRA exhaustion applies.

In any event, even judge-made exhaustion compels dismissal in this case, since the petitioner cannot establish the exceptions to even that more lenient standard. The petitioner argues futility (Opp., 26), but the underlying relief she seeks – re-release from custody – is entirely in the discretion of the BOP, and she cannot establish that even if she is not entitled to procedural protections by the Due Process Clause that the BOP would not have considered her release in its discretion. She also cannot refute that she was able to at least partially exhaust her remedies (see Pet., ¶51), and her refusal to proceed further with exhaustion was by choice, not by inability. It is immaterial that BOP now, through litigation, is "on notice" of the petitioner's claims. That is the case in

9

<u>any</u> unexhausted claim that results in litigation, and the respondents respectfully urge the court to reject the petitioner's cavalier efforts at mandatory administrative exhaustion.

For the reasons set forth above, and in the respondents' original papers, they ask the court to dismiss the petition.

Respectfully submitted,

Vanessa Roberts Avery
United States Attorney

  /s/
John W. Larson (ct28797)
Assistant United States Attorney
District of Connecticut
450 Main Street, Room 328
Hartford, CT 06103
T: (860) 947-1101
F: (860) 760-7979
john.larson@usdoj.gov